**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **SALVATORE GALLO** : | **CIVIL ACTION NO.** |
| **Plaintiff** : | |
| : | |
| : | |
| **v.** : | |
| : | |
| **CIGNA CORPORATION** : | |
| **Defendant** : | **JUNE 2, 2021** |

## COMPLAINT

### I. INTRODUCTION

1. Employers are liable to their employees for overtime at a rate of one and one-half times their regular rate when they work more than forty (40) hours in a work week. Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA")[1]; Connecticut Wage Act, Conn. Gen. Stat. §§ 31-68, *et seq.* ("CWA").

2. Employers cannot escape legal liability for wages due to their employees under state and federal wage laws simply by hiring workers through layers of other companies, sometimes called "temp agencies" or "staffing agencies" when in fact those entities are not the true employers.

3. Here, Defendant Cigna Corporation used PRO Unlimited, Inc. and Apex Systems, Inc. to try to distance itself from liability for overtime wages while simultaneously taking advantage of Gallo's overtime work. Cigna required Plaintiff Salvatore Gallo to work more than forty (40) hours per week but instructed him not to record more than forty (40) hours per work week on his time sheets. As a result, Apex only paid Gallo for forty hours per week when in fact he worked far more.

---

[1] *Greenawalt v. AT & T Mobility LLC*, 642 F. App'x 36, 38 (2d Cir. 2016) (*citing Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir.2003).

1

4. Defendant Cigna is in fact Gallo's employer and intentionally deprived him of thousands of dollars in wages and overtime pay. As a result, Cigna is liable to Plaintiff for back pay, liquidated damages, penalty damages, attorneys' fees, and costs.

## II. PARTIES

5. Plaintiff Salvatore Gallo ("Plaintiff" or "Gallo") is an individual residing in Wethersfield, Connecticut. At all times relevant to this Complaint, Gallo was an employee of Defendant, as that term is defined in the Fair Labor Standards Act ("FLSA") and the Connecticut Wage Act ("CWA").

6. Defendant Cigna Corporation ("Cigna") is a Delaware corporation with a principal place of business located in Bloomfield, Connecticut.

## III. JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331.

8. This Court has jurisdiction over Plaintiff's CWA claims pursuant to 28 U.S.C. § 1367 since they are so related to the FLSA claims that they form part of the same case or controversy.

9. Venue is proper in this district under 28 U.S.C. § 1391 because the acts or omissions giving rise to the claims in this complaint took place in this district.

## IV. LEGAL PRINCIPLES

10. Employers are liable to their employees for overtime at a rate of one and one-half times their regular rate when they work more than forty (40) hours in a work week. Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") [2]; Connecticut Wage Act, Conn. Gen. Stat. §§ 31-68, 31-71a, 31-72, et seq. ("CWA").

---

[2] *Greenawalt v. AT & T Mobility LLC*, 642 F. App'x 36, 38 (2d Cir. 2016) (*citing Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir.2003)).

11. The applicable definition of 'employer' under the FLSA states: ""Employer" includes any person[3] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

12. The applicable definition of 'employer' under the CWA states: ""Employer" means any owner or any person or, … corporation, … acting directly as, or on behalf of, or in the interest of an employer in relation to employees…" Conn. Gen. Stat. § 31-58(d).

13. Employers cannot avoid legal liability for wages due to their employees by hiring them through layers of other companies which have "no substantial, independent economic purpose" but are instead "most likely a subterfuge meant to evade the FLSA or other labor laws." *Zheng v. Liberty Apparel,* 355 F.3d 61 (2d Cir. 2003).

14. Employers who hire employees through temp agencies are still legally liable as employers if the work is done on their premises, if the work is done using their equipment, if the work is integral to the employer's operations, if the work would remain the same regardless of which agency referred the worker, and if the employer effectively controlled on-site terms and conditions of employment. *Barfield v. New York City Health and Hospitals Corp.,* 537 F.3d 132 (2008).

## V. FACTUAL BACKGROUND

15. Cigna Corporation ("Cigna") is a corporation headquartered in Bloomfield, Connecticut, and is a company engaged in the provision of healthcare insurance services.

16. Cigna utilizes and provides information technology ("IT") services as an integral part of the delivery of healthcare insurance technology services to their policyholders; it employs hundreds of IT professionals in various positions as part of their delivery of healthcare

---

[3] The FLSA defines "person" to include corporations. 29 U.S.C. § 203(a).

3

insurance technology services to their customers, including but not limited to database administrators, server administrators, programmers, application support personnel, call center support, and account administrators.

17. Cigna states on its website under "contract opportunities" that "all contract hiring is handled by Pro Unlimited, a managed services provider for Cigna. By clicking on the hyperlink above, you will be leaving the Cigna careers website and entering a site that is independently run by PRO Unlimited."[4] Cigna's website therein provides a hyperlink to the website of PRO Unlimited.

18. The PRO Unlimited website contains the Cigna emblem and states, "Contractor Positions at Cigna"; as of June 1, 2021, Pro Unlimited posted 28 open jobs at Cigna, including but not limited to IT positions such as "Software Engineering Advisor" and "Systems Analysis Advisor" at its Bloomfield, CT headquarters.[5]

19. PRO Unlimited, Inc. ("PRO Unlimited") is headquartered in San Francisco, California, and is a company engaged in the business of contingent (temporary) workforce management; it also hires contract employees to perform services on a temporary basis to third party businesses, including but not limited to contract employees that perform information technology ("IT") functions.

20. PRO Unlimited markets to companies claiming that it can help reduce the risks associated with "contractor misclassification or co-employment."[6]

21. In or about February of 2019, Gallo learned of a position of data center infrastructure specialist and submitted a resume and application to Apex Systems, Inc.

---

[4] https://jobs.cigna.com/us/en/contract-opportunities (last accessed 6/1/21).
[5] https://directsourcepro-cgn.prounlimited.com//careers?pid=137446326638&domain=directsourcepro-cigna.com (last accessed 6/1/21).
[6] https://www.prounlimited.com/pro-1099-compliance.php (last accessed 6/1/21).

4

22. On or about March 19, 2019, Gallo signed a contract presented to him by Apex Systems, Inc. ("Apex"), a temp agency for IT professionals, to work as a "Contract Employee" for "ProUnlimited at Cigna" in the position of "Technical Support Specialist."

23. Gallo agreed under this contract to work in return for a promise to be paid "$31.82 per hour for all hours worked and verified by Client representative [ProUnlimited at Cigna] in a workweek[.]"

24. On or about March 19, 2019, Tim Stino, one of the managers of Apex, arranged an interview between Plaintiff Gallo and Eugene Deroode, who holds the position of Architecture Senior Manager at Cigna.

25. Mr. Stino explained to Mr. Gallo that Mr. Deroode would be deciding whether Gallo would be hired to work at the Cigna facility.

26. Mr. Deroode approved of the hire of Mr. Gallo in or about March of 2019; Gallo thereafter began working at the Cigna headquarters.

27. Mr. Gallo performed a discrete job integral to Cigna's business; the position description stated in part:

> Responsible for the continuous operation and performance of Cigna's Data Centers, day-to-day support of server, network and storage components. This support includes chassis, module and power supply replacement during incidents, project engagements, RMA returns and maintenance activities. This position will ensure high quality service delivery through responsiveness to network, server and storage problems, crisis management, and adherence to service levels and network improvement initiatives. A person in this role is expected to respond to high impact issues on a 24x7 basis, participating in a rotating on call schedule with other team members, with work hour norms based on second or third shift.

28. Mr. Deroode required that Mr. Gallo report to Steven Danko, who was another Cigna employee, who supervised the team of five to six (5-6) IT professionals in the infrastructure department which included Mr. Gallo.

29. Mr. Danko and Mr. Deroode (both Cigna) trained Mr. Gallo, set Mr. Gallo's schedule, provided him with his daily assignments, and closely supervised Mr. Gallo's work, constantly following up with Mr. Gallo.

30. Every day, for security reasons, Mr. Gallo was required to use a card to swipe into the Cigna facility, and he was again required to use the same card to swipe out of the facility when he left every day, creating a record of when he entered and left the building.

31. Cigna also provided Mr. Gallo a laptop which he was required to use when performing his work for Cigna, and had to perform the work on Cigna's premises.

32. Within the first week, Mr. Deroode informed Mr. Gallo that he must electronically submit a weekly tally of his hours to both Apex and Cigna which had to match.

33. Mr. Deroode informed Mr. Gallo that he was to put no more than forty (40) hours on the time submissions for each week, even if he worked in excess of forty (40) hours, stating, "you can never put more than 40 hours on your time sheet, I don't care how many hours you work."

34. As Mr. Gallo continued working for Cigna, the assigned work was far more than forty (40) hours per week, and sometimes as much as one hundred (100) hours per week.

35. Mr. Gallo reported the excessive hours to Mr. Deroode, explaining that he was losing out on a substantial amount of money by not reporting all his hours.

36. Mr. Deroode told Mr. Gallo that if he did not continue to follow his directives regarding the underreporting of hours, that he would fire Mr. Gallo, and replace him with another temporary employee, stating, "If you can't do it, we'll find someone who will."

37. Mr. Deroode (Cigna) had the ability to fire Mr. Gallo.

38. Mr. Gallo worked exclusively for Cigna under their direction, per the contract with Pro Unlimited, and did not perform work for any other businesses at that time.

## VI. COUNT ONE – VIOLATION OF FLSA VS. CIGNA CORPORATION

39. Based on the foregoing, Defendant Cigna's conduct in this regard was a violation of the FLSA, in that Defendant knew or should have known that Gallo was working more than 40 hours per week but not being paid overtime.

40. Accordingly, Defendant is liable to Plaintiff for back overtime compensation at one–and-one-half times his regular rate of pay for all hours worked in excess of forty per week, liquidated damages, attorneys' fees and court costs, pursuant to 29 U.S.C. § 216(b), *et seq*.

## VII. COUNT TWO – VIOLATION OF CWA VS. CIGNA CORPORATION

41. Based on the foregoing, Defendant Cigna's conduct in this regard was a violation of the Connecticut Minimum Wage Act, in that Defendant knew or should have known that Gallo was working more than 40 hours per week but not being paid overtime under Conn. Gen. Stat. § 31-68, *et seq*.

42. Accordingly, Defendant is liable to Plaintiff for back overtime compensation at one–and-one-half times his regular rate of pay for all hours worked in excess of forty per week, penalty damages, attorneys' fees and court costs, pursuant to Conn. Gen. Stat. § 31-68, *et seq*.

## VIII. DEMAND FOR RELIEF

WHEREFORE, Plaintiff claims:

a. Unpaid overtime wages under the FLSA;

b. Unpaid overtime wages under the CWA;

c. Liquidated damages under the FLSA;

d. Penalty damages under CWA;

e. Pre-Judgment and Post-Judgment interest, as provided by law;

f. Attorneys' fees and costs of suit under the FLSA and CWA, including expert fees; and

g. Such other and further relief as the Court deems just and equitable.

## X. JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

Plaintiff, Salvatore Gallo

By: Richard E. Hayber (ct11629)
Hayber, McKenna & Dinsmore, LLC
750 Main Street, Suite 904
Hartford, CT 06103
Tel: (860) 522-8888
Fax: (860) 218-9555
rhayber@hayberlawfirm.com
Attorney for Plaintiff